UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CHRISTOPHER WARWICK,
    *Plaintiff*,

v.

JOHN DOE *et al*.,
    *Defendants*.

No. 3:20-cv-227 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Christopher Warwick is a sentenced prisoner in the custody of the Connecticut Department of Correction ("DOC"). He filed this lawsuit *pro se* and *in forma pauperis* against numerous DOC officials, principally alleging that he has suffered from severe dental issues and that the defendants have been deliberately indifferent to his health and safety in violation of his constitutional rights. He seeks damages, declaratory, and injunctive relief in connection with his claims. For the reasons set forth below, I will allow some of Warwick's claims to proceed.

**BACKGROUND**

The following facts are alleged in the complaint and accepted as true only for purposes of this ruling. Doc. #1.

In November 2017, while confined as an inmate at Cheshire Correctional Institution ("Cheshire"), Warwick filed an Inmate Request to see a dentist. *Id*. at 9 (¶ 20). On December 19, 2017, Dr. Bruce Lichtenstein and his dental assistant Yvonne Brochert took x-rays of Warwick's teeth. *Id.* at 9 (¶ 21). The x-ray revealed that Warwick had an impacted tooth and another tooth with "deep decay." *Id.* at 9 (¶ 22). Dr. Lichtenstein explained to Warwick that it was these teeth that were causing him pain, that the teeth should be extracted by an oral surgeon at UCONN Health Center, and that his recommendation for the extraction procedure had to be referred to the

1

Utilization Review Committee ("URC") for approval. *Id.* at 9-10 (¶ 23).[1] Dr. Lichtenstein did not prescribe Warwick any pain medication, although he noted in the dental record that Warwick was in pain. *Id.* at 10 (¶ 24).

After Warwick inquired if he could have a root canal to save the teeth, Dr. Lichtenstein explained that UCONN's policy was to extract teeth damaged by decay. *Ibid.* (¶¶ 25-26). Warwick later researched DOC Administrative Directive 8.4(5), which indicated that Warwick should have been provided with a dental screening upon admission to Cheshire and a dental examination within three months of that admission; the directive also provided that root canals could be performed. *Id.* at 10-11 (¶¶ 27, 29, 31).[2]

On December 20 and 21, 2017, Warwick filed two Health Services Review ("HSR") forms to seek a root canal and to alert UCONN's Correctional Managed Healthcare Center ("CMHC"), a subsidiary of UCONN Health, that he had never received the required dental screening or examination upon his admission to DOC custody. *Id.* at 11-12 (¶¶ 31-32). After he received no answer to these HSR forms, he filed an Inmate Request to HSR Coordinator McClain informing her that he had received no reply to his HSR forms. *Id.* at 12 (¶ 34). Warwick did not receive a response to this Inmate Request. *Ibid.* (¶ 35).

A month passed with no dental work. Still in pain, Warwick wrote to the dental unit in January 2018 to inform them that his pain was spreading and to ensure that they had not forgotten his need for dental care. *Id.* at 12-13 (¶ 36). Dental assistant Brochert informed

---

[1] The Utilization Review Committee ("URC") reviews inmate requests for specialty care, treatment, services, or diagnostic tests based on standardized guidelines. *See* Doc. #1 at 40 (Ex. 2) (A.D. 8.9(3)(K)).

[2] *See* Doc. #1 at 36 (Ex. 1) (A.D. 8.4(5)(F), "Endodontic services shall include root canal . . . as determined by appropriately trained licensed health services staff.").

Warwick that he was "already scheduled," but she did not tell him for what procedure he was scheduled or when the procedure was scheduled. *Id.* at 13 (¶ 37). She also directed him to buy Ibuprofen from the commissary for his pain, which Warwick alleges would take two weeks to receive and which were not the type of product that could provide him effective pain relief. *Ibid.*

Another month passed without dental treatment. On February 21, 2018, Warwick filed another Inmate Request, stating that his pain had grown to the point that he could not use the left side of his mouth. *Ibid.* (¶ 39). Three days later, Warwick filed his third HSR form, requesting to have dental treatment "as soon as possible" and explaining that his pain had gotten worse and that he "could not use the left side of his mouth to chew food, brushing hurts, biting down hurts, and hot & cold is unbearable." *Id.* at 13-14 (¶ 40).

On March 7, 2018, Dr. Lichtenstein again examined Warwick and made the same diagnosis he had previously made in December 2017. *Id.* at 14 (¶ 41). Dr. Lichtenstein also explained that the delay in treatment was due to the shortage of oral surgeons because UCONN's CMHC was not willing to pay the industry standard for salaries. *Id.* at 14-15 (¶ 42). Although Warwick was to receive oral surgery later in March, Dr. Lichtenstein also informed Warwick that if one of UCONN Health's non-imprisoned clients required dental work, Warwick's procedure could be rescheduled to a later date. *Ibid.* Dr. Lichtenstein stated that he had a list of prisoners waiting for care, but none with as serious dental issues as Warwick. *Ibid.*

On March 23, 2018, Warwick's oral surgery was performed. *Id.* at 16 (¶ 46). One month later, in April 2018, HSR Coordinator McClain responded to Warwick's third HSR form, classifying it as "returned w/out disposition." *Id.* at 15 (¶ 43).

Several months later, at Warwick's request Dr. Mark Carreira, an outside dentist, rendered an opinion about the care provided for Warwick's impacted and decaying teeth based on a review of medical records. *Id.* at 16 (¶ 47). Although Dr. Carreira expressed "no doubts that the findings, diagnosis and appropriate treatment was ultimately given[,]" Dr. Carreira remarked that "someone clearly dropped the ball" because the time period between diagnosis and treatment "was too long to leave someone in pain, especially someone who has no ability to drive themselves anywhere to seek their own medical attention." *Id*. at 102-103 (Ex. 15).

After receiving Dr. Carreira's opinion, on October 10, 2018, Warwick filed his fourth HSR form, explaining how the severe pain had affected his life during the delay in treatment. *Id*. at 16 (¶ 48). On October 22, 2018, HSR Coordinator McClain returned his fourth HSR form "without disposition." *Ibid.* (¶ 49). McClain also responded that CMHC is not responsible for scheduling prisoners for treatment at the UCONN dental unit. *Ibid.* Later that month, Warwick deposited his fourth HSR and his appeal thereof into the Medical Administrative Remedy box at Cheshire. *Id.* at 17 (¶ 51). Warwick received no response. *Ibid.*

The next month, Warwick was transferred to Osborn Correctional Institution ("Osborn"). *Ibid.* (¶ 52). On December 8, 2018, while at Osborn, Warwick filed a request for Health Services Administrator Furey to add a copy of his HSR appeal to his file. *Ibid.* (¶ 53). However, on January 16, 2019, Furey stated in reply that he did not have a copy of Warwick's appeal, although Warwick's health record from Cheshire was transferred to Osborn. *Id.* at 17-18 (¶ 54). After Warwick filed two Freedom of Information Act ("FOIA") requests regarding his fourth HSR and his appeal thereof, the FOIA Liaison was able to locate a copy of Warwick's fourth HSR but not his appeal of that HSR. *Id.* at 18 (¶ 55).

Although Warwick filed another FOIA request for the appeal (and he received a response that his FOIA request was being processed), his appeal of his fourth HSR has yet to be located. *Ibid.* (¶ 56). Warwick alleges that it was destroyed. *Ibid.* (¶ 57). On the basis of certain news reports, Warwick alleges that Dr. Maurer, then-DOC Commissioner Semple, and Dr. Breton had notice of the "breakdown" in the prisoner healthcare system provided by UCONN's CMHC, the Connecticut DOC, and UCONN Health, but they failed to correct the systemic problems. *Id.* at 21 (¶ 67).

On February 18, 2020, Warwick filed this lawsuit, bringing claims against nineteen individuals in their individual and official capacities under the Eighth and First Amendments. Doc. #1 at 1-2.[3] Warwick alleges that all defendants are liable under the Eighth Amendment for the delay in his oral surgery, which forced Warwick to experience severe pain for more than three months. *Id.* at 2. Warwick also asserts a First Amendment retaliation claim against two defendants, HSR Coordinator McClain and dental assistant Brochert. *Id.* at 27-28. He seeks money damages as well as declaratory and injunctive relief.[4]

---

[3] Warwick's complaint named John Doe 1, Medical Director for UCONN Correctional Managed Healthcare; Dr. Bruce Lichtenstein, a dentist employed at Cheshire; Yvonne Brochert, a dental assistant at Cheshire; Nurse Debbie Wilson, URC Coordinator at Cheshire; Dr. Ricardo, a member of the URC; Jane Roes 1-5, members of the URC; John Doe 2, UCONN Health's Medical Director; Dr. Benoit, UCONN Health's Dental Director; John Does 3 and 4, dental unit employees at UCONN Health; Scott Semple, then-DOC Commissioner; Kathleen Maurer, DOC Director of Health Services; Dr. Joseph Breton, DOC Medical Director; Scott Erfe, Warden at Cheshire; and Stephanie McClain, Health Services Review Coordinator at Cheshire, all in their individual and official capacities. Doc. #1 at 3-9. I subsequently granted Warwick's motion to dismiss Dr. Ruiz and Jane Roes 1-5 as defendants. *See* Docs. #8; #9.

[4] In his complaint, Warwick additionally asserts state law negligence claims. *See* Doc. #1 at 29-30. I will not address his state law claims now because this review for purposes of 28 U.S.C. § 1915A is limited to federal law claims.

**DISCUSSION**

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the compliant, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010).

The Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Eighth Amendment*

The Eighth Amendment to the U.S. Constitution protects against the infliction of cruel and unusual punishment. *See* U.S. Const. amend. VIII. The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to a substantial risk of serious harm or to the serious medical needs of a sentenced prisoner. *See Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).

A deliberate indifference claim under the Eighth Amendment has two requirements. First,

the prisoner must allege that he was subject to an objectively serious risk of harm or serious medical need, as distinct from what a reasonable person would understand to be a minor risk of harm or minor medical need. Second, the prisoner must allege that a defendant prison official acted not merely carelessly or negligently but with a subjectively reckless state of mind akin to criminal recklessness (*i.e.*, reflecting actual awareness of a substantial risk that serious harm to the prisoner would result). *See Benjamin v. Pillai*, 794 F. App'x 8, 11 (2d Cir. 2019) (explaining that a sentenced prisoner must prove "that the charged official possessed 'a state of mind that is the equivalent of criminal recklessness.'" (quoting *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996)); *see also, e.g.*, *Spavone v. N.Y. State Dept. of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012); *Collazo v. Pagano*, 656 F.3d 131, 135 (2d Cir. 2011) (*per curiam*).

With respect to the objective component, Warwick's allegations that the delay in treatment caused him to suffer such extreme pain that he could not eat, brush his teeth, or bite down without pain are sufficient to state a plausibly serious harm caused by the delay in treatment. His dental conditions resulting in extreme pain, as pled here, suffice to meet the first requirement. *See Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000); *Cooper v. Cook*, 2020 WL 1923233, at *3 (D. Conn. 2020).

I will evaluate the second subjective component requirement in light of the particular allegations as to each defendant.

### *Dr. Lichtenstein and Brochert*

Warwick alleges that Dr. Lichtenstein and dental assistant Brochert were aware of his serious dental condition causing him pain, and that he made at least two attempts to contact the

dental staff to remind them of his need for dental treatment, but neither took steps to ensure that Warwick was afforded the necessary care to remedy his painful dental condition in a timely manner. *See* Doc. #1 at 9-10, 12-14 (¶¶ 23-24, 36-41).

I will allow the complaint to proceed against Dr. Lichtenstein in his personal capacity. In addition to the foregoing allegations, the complaint also alleges that Warwick overheard Dr. Lichtenstein explaining that Warwick's delay in treatment was due to the shortage of oral surgeons because UCONN's CMHC was not willing to pay the industry standard for salaries, and if one of UCONN Health's non-imprisoned clients required dental work, Warwick's procedure could be rescheduled to a later date. *Id.* at 14-15 (¶ 42). These allegations about Dr. Lichtenstein's explanations for the delay in Warwick's dental surgery suggest that non-medical reasons, such as short-staffing, were the cause and that—despite recommending to the URC that Warwick receive further treatment—Dr. Lichenstein was content, without further inquiry, to allow Warwick to remain untreated for a serious medical condition for several months. *Id.* at 13 (¶ 38).

Allegations of this nature are sufficient to state a claim for deliberate indifference against Dr. Lichtenstein at this stage. *Cf. Chance v. Armstrong*, 143 F.3d 698, 703-04 (2d Cir. 1998) (subjective prong for deliberate indifference claim against dentists in light of allegation that the dentists "recommended extraction not on the basis of their medical views, but because of monetary incentives"); *Cooper v. Cook*, 2020 WL 1923233, at *4 (D. Conn. 2020) (citing *Chance* to permit a deliberate indifference claim to proceed where, *inter alia*, "before even examining Cooper [, the doctor] declared that Cooper would not receive any treatment from him,

apparently because he was short-staffed").[5]

But Warwick's allegations against dental assistant Brochert, in the absence of any facts suggesting that Brouchert actually had and failed to exercise the power to get Warwick in to see a dental surgeon sooner amount to negligence at most, which is a far cry from the criminal recklessness required to sustain a deliberate indifference claim. *See Cooper*, 2020 WL 1923233, at \*4; *see also Chance*, 143 F.3d at 703 ("[M]ere medical malpractice is not tantamount to deliberate indifference," unless "the malpractice involves culpable recklessness, i.e., a conscious disregard of a substantial risk of serious harm."); *Hilton*, 673 F.3d at 127 (explaining that "it need not be shown that Dr. Wright intended for [plaintiff] Hilton to suffer harm, but Dr. Wright's actions in this regard must have been more than merely negligent" to show the requisite mental state). I will therefore dismiss Warwick's deliberate indifference claim against dental assistant Brochert.

### *URC Coordinator Wilson*

Warwick also alleges that URC Coordinator Wilson acted with deliberate indifference to his need for dental treatment. He claims that Wilson failed to ensure that he had access to community standard dental care, failed to follow the treatment plan created for Warwick, failed to immediately refer him for emergency dental care, and failed to coordinate, or delayed in

---

[5] Because Dr. Lichtenstein works for the DOC, he is immune from money damages suits in his official capacity. *Currytto v. Doe*, 2019 WL 2062432, at \*4 (D. Conn. 2019) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) and *Davis v. New York*, 316 F.3d 93 (2d Cir. 2002)); *Wortham v. Plourde*, 2014 WL 4388560, at \*5 (D. Conn. 2014) (concluding the same as to a doctor employed by the UCONN health center). Accordingly, insofar as Warwick sues Dr. Lichtenstein and all defendants in their official capacities for money damages, I will dismiss his claims. Furthermore, although Warwick alleges that he filed a claim with the State of Connecticut Claims Commissioner to request a waiver of the state sovereign immunity in December 2018, Doc. #1 at 18 (¶ 58), as I explained in *Nowacki v. Town of New Canaan*, 2017 WL 1158239 (D. Conn. 2017), "the Claims Commissioner is empowered only to authorize a lawsuit to be brought in state court, not federal court," *id.* at \*6.

coordinating, his offsite dental referral. Doc. #1 at 23-24 (¶ 72).

I construe Warwick's allegations against Wilson as taking issue with the URC procedures and Wilson's coordination thereof. "[D]eliberate indifference may be shown where prison officials erect arbitrary and burdensome procedures that 'result in interminable delays and outright denials of medical care to suffering inmates.'" *Barfield v. Semple*, 2019 WL 3680331, at *11 (D. Conn. 2019) (internal quotations omitted). But the complaint fails to adequately describe how the URC's referral, review and decision processes are arbitrary or burdensome, as is required to suggest that Wilson, as the URC coordinator, was deliberately indifferent or acted with conscious disregard to delay Warwick's dental treatment.

And to the extent that Warwick's allegations show that Wilson, as the coordinator of the URC, failed in discharging her duties, simple negligence of prison personnel does not constitute deliberate indifference. *See Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006) ("[T]he risk of harm must be substantial and the official's actions more than merely negligent"); *Cooper*, 2020 WL 1923233, at *4. In short, Warwick's complaint does not give rise to any suggestion Wilson acted with the requisite culpable mental state while engaging in any of the conduct of which Warwick complains. I will thus dismiss Warwick's Eighth Amendment claim of deliberate indifference against Wilson.

### *John Doe 3 and John Doe 4*

Wilson also brings a deliberate indifference claim against John Doe 3 and John Doe 4, who were responsible for the scheduling of prisoners' dental care. Doc. #1 at 6, 25-26 (¶¶ 11-12, 76-77). "It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show, *inter alia*, the defendant's personal involvement in

the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). Here, Warwick alleges only that John Doe 3 and John Doe 4 failed to report scheduling problems and to follow policies and procedures, such as "triag[ing] patients so emergent care was administered first" and "patients with painful conditions were treated promptly." Doc. #1 at 25-26 (¶¶ 76-77). These conclusory allegations do not sufficiently show that either John Doe 3 or John Doe 4 were personally involved with or had any knowledge of delaying his oral surgery, let alone that they acted with the requisite mental culpability in so doing. Accordingly, I will dismiss Warwick's deliberate indifference claims against John Does 3 and 4.

### *Supervisory defendants*

Warwick also alleges claims of deliberate indifference against a number of supervisory officials: CMCH Medical Director John Doe 1, UCONN Health Medical Director John Doe 2, UCONN Health's Dental Director Dr. Benoit, former DOC Commissioner Semple, DOC Director of Health Maurer, DOC Medical Director Breton, and Cheshire Warden Erfe. Doc. #1 at 22, 24-27 (¶¶ 69, 74, 75, 78, 79, 80).

A defendant cannot be held personally liable for a constitutional violation by other defendants simply based on a "high position of authority in the prison system." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994). Even a general allegation that a defendant failed to supervise subordinates does not establish personal involvement without a factual connection between the defendant's alleged failure and the alleged resulting harm to the plaintiff. *See Samuels v. Fischer,* 168 F. Supp. 3d 625, 639 (S.D.N.Y. 2016) (citing cases). Instead, to demonstrate personal involvement of a supervisory official, a plaintiff is required to plead facts alleging at least one of the following scenarios:

11

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citation omitted).[6] In addition to pleading facts that sufficiently show one of these five *Colon* prongs, a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation. *See Raspardo v. Carlone*, 770 F.3d 97, 116 (2d Cir. 2014); *see also Poe v. Leonard,* 282 F.3d 123, 140 (2d Cir. 2002) (plaintiff must show "an affirmative causal link" between the supervisor's involvement and the constitutional injury).

Warwick's allegations against John Doe 1, John Doe 2, Dr. Benoit, former Commissioner Semple, Maurer, and Breton suggest that he seeks to establish liability under the third *Colon* prong. *See Colon*, 58 F.3d at 873 ("the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom…."). But Warwick has not adequately alleged liability as to these supervisory defendants under this or any other *Colon* prong. Although Warwick alleges that John Doe 1, John Doe 2, Dr. Benoit, former Commissioner Semple, Maurer, and Breton were aware that prisoners were receiving substandard dental care as a general matter, his complaint makes no factual allegations that any

---

[6] The Second Circuit has observed that the Supreme Court's decision in *Ashcroft v. Iqbal* may have "heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations[.]" *Grullon*, 720 F.3d at 139. However, without further Second Circuit guidance on this issue, the court assumes for purposes of ruling on this motion that the categories outlined in *Colon* remain valid. *See also Barfield*, 2019 WL 3680331, at *13 n.11 (noting that district courts in this circuit have concluded that only first and third *Colon* factors survived *Iqbal*, but that the majority view is that *Colon* personal involvement analysis still applies to Fourth, Eighth or Fourteenth Amendment claims of unreasonable conduct or deliberate indifference) (citations omitted).

of these supervisory defendants were aware of the specific treatment protocols or policies of which he complains. *Cf. Barfield*, 2019 WL 3680331, at *14 (concluding the same as to the treatment protocols and policies for chronic HCV).

Instead, Warwick alleges generally that John Doe 1 was responsible for ensuring sufficient staff members to provide adequate dental care for the prisoner population, while John Doe 2, Dr. Benoit, former Commissioner Semple, Maurer, and Breton were all responsible for ensuring that CMHC provided the prison population with access to dental care that met community standards. Doc. #1 at 3, 5-8 (¶¶ 4, 9-10, 13-15). Warwick also alleges, based on news articles, that certain of these supervisory defendants, Maurer, Semple, and Breton, "had knowledge of the breakdown in CDOC's, CMHC's, and UCONN Health's health care of prisoners" but they "failed to correct these systemic problems." *Id.* at 21 (¶ 67). Such general allegations are not enough to state a plausible claim that these supervisory defendants were aware at the relevant time that the specific policies with regard to dental surgery were substandard, or that the dental care being provided to Warwick did not comply with applicable policies.

Second, although Warwick alleges that John Doe 1, John Doe 2, Dr. Benoit, former Commissioner Semple, Maurer, and Breton were aware of inadequate dental treatment, his complaint does not make specific factual allegations suggesting a causal link between inadequacies in his own dental treatment on the one hand, and the various prison policies governing dental care or the failure to follow that policy on the other. Instead, Warwick alleges that his dental treatment was delayed because UCONN's CMCH refuses to pay oral surgeons at the market rate, which resulted in a shortage of oral surgeons for prisoners within the custody of DOC. Doc. #1 at 14-15 (¶ 42). Warwick further alleges that non-prisoner UCONN clients are

prioritized over prisoners in receiving dental treatment. *ibid.*, even though his complaint makes no suggestion that his own dental surgery was actually delayed due to non-prisoner clients.

Nor has Warwick adequately alleged that Warden Erfe is liable for violation of the Eighth Amendment under the fourth or fifth *Colon* prongs. *See Colon*, 58 F.3d at 873 ("(4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring."). Warwick alleges that Erfe failed to inform himself about the level of dental "wrongdoing and inadequate care" at Cheshire, failed to ensure that the prisoners in his custody received community standard care, and failed to ensure that the CMHC employees within Cheshire followed the administrative directives relevant to health care and the HSR process. Doc. #1 at 27 (¶ 80). But, as with his claims against the other supervisory defendants, although Warwick alleges that Erfe was responsible for the overall supervision of Cheshire and for ensuring that its resident inmates had access to healthcare that met community standards, *id.* at 8 (¶ 16), he has not alleged specific facts suggesting that Erfe was "grossly negligent in supervising subordinates who committed the wrongful acts" or that Erfe had any awareness of Warwick's delayed dental treatment such that he "fail[ed] to act on information indicating that unconstitutional acts were occurring, *Colon*, 58 F.3d at 873.

In sum, Warwick does not allege involvement by any of the supervisory defendants in the creation or administration of the dental treatment polices or actual knowledge at the relevant times by any of them of inadequate dental treatment. Nor do his allegations establish a causal link between the inadequacies in dental treatment of which these supervisory defendants were allegedly aware and inadequate treatment for his dental surgery. Warwick's allegations establish only that these supervisory defendants had high-level responsibility for individuals in DOC

custody and the provision of healthcare. This, standing alone, is insufficient to state a section 1983 claim for damages under a supervisory theory of liability. *See Ayers v. Coughlin,* 780 F.2d 205, 210 (2d Cir. 1985) (requiring "a showing of more than the linkage in the prison chain of command" to hold a prison official liable under Section 1983); *see also McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004); *Barfield*, 2019 WL 3680331, at *14. I will therefore dismiss Warwick's supervisory liability claim of deliberate indifference against John Doe 1, John Doe 2, Dr. Benoit, former Commissioner Semple, Maurer, Breton, and Erfe.

### *First Amendment*

Warwick brings First Amendment retaliation claims against HSR Coordinator McClain and dental assistant Brochert, alleging that certain actions taken by both with regard to his submissions constituted retaliation for filing them in the first place. Doc. #1 at 27-29 (¶¶ 81, 82).

"Prison officials may not retaliate against inmates for exercising their constitutional rights." *Miller v. Semple*, 2019 WL 6307535, at *3 (D. Conn. 2019) (quoting *Riddick v. Arnone*, 2012 WL 2716355, at *6 (D. Conn. 2012)). But "[t]o prevail on a First Amendment retaliation claim, [Warwick] must establish (1) that the speech or conduct at issue was protected, (2) that the [official] took adverse action against [him], and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019); *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks omitted).

The allegations in Warwick's complaint establish that the activity in which he engaged— based on his submission of inmate requests and HSR forms—was protected. Filing a lawsuit, an administrative complaint, or a prison grievance is protected speech or activity. *See Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015); *Booth v. Comm'r of Corr.*, 2019 WL 919580, at *5

(D. Conn. 2019).

Warwick's complaint that McClain and Brochert obstructed the process of handling his inmate submissions is also sufficient to plausibly allege an adverse action at this stage. "An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon*, 938 F.3d at 40 (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)). Interference with or failure to process an inmate's grievance procedure may constitute retaliatory adverse conduct under the First Amendment. *See, e.g.*, *Harnett v. Barr*, 538 F. Supp. 2d 511, 522 (N.D.N.Y. 2008).

But as to the third element, Warwick's complaint fails to allege facts that plausibly establish the requisite causal connection between his protected activity and the adverse actions taken by McClain or Brochert. In order to allege causation, a plaintiff must state facts "showing that the conduct at issue was constitutionally protected and that the protected conduct was a substantial or motivating factor in the prison officials' decision to discipline [him]." *Harnage v. Brighthaupt*, 168 F. Supp. 3d 400, 412 (D. Conn. 2016), *aff'd*, 720 F. App'x 79 (2d Cir. 2018).

Here, Warwick alleges that McClain retaliated against him for filing HSR forms by obstructing the HSR process, which silenced his "ability to use the only process available." Doc. #1 at 28 (¶ 81). Warwick also alleges that Brochert retaliated against him for filing Inmate Requests because she "obstructed the Inmate Request process, kept his request for treatment from Dr. Lichtenstein's attention, and silenced his request for treatment. *Id.* at 28-29 (¶ 82).

These allegations do not adequately show how Warwick's protected activity was a substantial or motivating factor in McClain's or Brochert's decision to take that action. Courts treat prisoner retaliation claims "with skepticism and particular care, because virtually any

16

adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (citation omitted). Consequently, the Second Circuit has required that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295. But in contrast, Warwick's allegations as to McClain's and Brochert's retaliatory conduct are stated "in wholly conclusory terms." *Ibid.* (internal quotations and citation omitted).

Because Warwick has not sufficiently alleged facts to suggest any action taken by McClain and Bouchert was motivated by retaliation for engaging in protected conduct by filing the complaints in the first place, I will dismiss his First Amendment retaliation claim against McClain and Brochert.

To the extent that Warwick may be alleging a claim based on McClain's and Brochert's failure to comply with the relevant prison process and procedures, "a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983." *Fine v. UCONN Med.*, 2019 WL 236726, at *9 (D. Conn. 2019) (citation omitted). "Inmates have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance processed properly." *Schlosser v. Manuel*, 2020 WL 127700, at *5 (D. Conn. 2020) (citing *Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018)).

### *Injunctive and declaratory relief*

In connection with his claims Warwick seeks injunctive relief in the form of an order requiring that his teeth be examined and cleaned every six months. Doc. #1 at 31. But Warwick's

Eighth Amendment claim is predicated on the delay in dental treatment related to his impacted teeth; his requested injunctive relief thus has little to do with the claimed deliberate indifference to his serious medical needs at issue in this case. And Warwick's own allegations make clear that he eventually received the dental surgery he required to remedy his painful condition by the time he filed this complaint in February 2020, and he does not allege that he has failed to receive necessary dental treatment since. Because Warwick fails to allege facts to show any ongoing constitutional violation, I will dismiss his claims against defendants for declaratory or injunctive relief. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011); *Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000); *Vaughan v. Aldi*, 2019 WL 6467550, at *3 (D. Conn. 2019).

Furthermore, because Warwick's complaint makes clear that his dental surgery took place, albeit after a lengthy delay, I will also dismiss Warwick's request for a declaration that all defendants have violated his constitutional rights. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146 (1993) (explaining that sovereign immunity "does not permit judgments against state officers declaring that they violated federal law in the past."); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young*, however, to claims for retrospective relief.").

## CONCLUSION

In accordance with the foregoing analysis, the Court enters the following orders:

(1) Warwick's Eighth Amendment deliberate indifference claim and his state law negligence claim may proceed against defendant Dr. Lichtenstein in his individual capacity for money damages. All other claims and defendants in this action are DISMISSED, subject to Warwick's filing of an amended complaint **within twenty-one (21) days** if he is able to allege additional facts to cure the deficiencies identified in this ruling.

(2) The Clerk is directed to correct the case caption to name the following defendant in this action: *Warwick v. Lichtenstein*.

(3) The Clerk of Court shall verify the current work addresses for Dr. Lichtenstein with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint (Doc. #1) to the defendant in his individual capacity at the confirmed address within **twenty-one (21)** days of this order, and report to the Court on the status of the waiver requests on the **thirty-fifth (35)** day after mailing. If the defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on him, and he shall be required to pay the costs of such service in accordance with Fed. R. Civ. P. 4(d).

(4) The defendant shall file his response to the complaint, either an answer or motion to dismiss within **sixty (60)** days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) The Clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs.

(6) Discovery, pursuant to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** of this order. Discovery requests need not be filed with the Court.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** of this order.

(8) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21)** days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Warwick changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Warwick must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Warwick has more than one pending case, he should indicate all of the case numbers in the notification of change of address. Warwick should also notify defendant or defense counsel of his new address.

(10) Warwick shall utilize the Prisoner Efiling Program when filing documents with the court. Warwick is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on defendant's counsel by regular mail.

It is so ordered.

Dated at New Haven this 27th day of May 2020.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge